### KITTEL v. AUGUSTA, T. & G. R. CO. et al.

(Circuit Court of Appeals, Second Circuit. January 7, 1898.)

#### No. 41.

1. INSOLVENT CORPORATION—OFFICER AS CREDITOR—RIGHTS AND LIABILITIES.

A director of a corporation, who is also a creditor, is not guilty of a fraud because he places his claim in judgment, and sells the property of the corporation thereunder, provided he thereby obtains no advantage of other creditors; and where he buys the property himself, and fails to divide the proceeds with another creditor, of whose claim he has no knowledge, he can be held accountable by such other creditor for only a proportionate share of the actual value of the property so obtained,— not less than the amount bid.

2. SAME—ACCOUNTING TO OTHER CREDITORS—INTEREST AND COSTS.

Defendant, who was an officer, and also a creditor, of a corporation, sold its property under a judgment obtained by him. Complainant afterwards obtained a judgment against the corporation, and brought suit to compel payment of the same by defendant. No notice of his claim was given, or demand made, before suit. *Held* that, on rendition of a decree requiring defendant to divide the proceeds of the property sold pro rata, complainant was entitled to interest on the amount recovered, from the date of service of his complaint, and to costs.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by Joseph J. Kittel against the Augusta, Tallahassee & Georgia Railroad Company, the Carrabelle, Tallahassee & Georgia Railroad Company, and William Clark, and is brought up by cross appeals from the circuit court.

John A. Straley, for complainant.

Chas. B. Meyer, for defendants.

Before LACOMBE and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The facts out of which the cause of action arose are as follows: In 1889 and 1890 the complainant, Kittel, loaned $29,450 to the Augusta, Tallahassee & Gulf Railroad Company (hereinafter called the Augusta Railroad), upon its promissory notes secured by mortgage upon 109,000 acres of land situated in the Northern district of Florida, and owned by said railroad. The notes not being paid, suit was brought on the mortgage, and judgment of foreclosure entered, directing the sale of the mortgaged premises, which took place in November, 1892. The premises sold did not realize the amount due for notes, interest, costs, expenses of sale, etc.; and a deficiency judgment against the Augusta Railroad, in the sum of $6,893.05, was entered on February 28, 1893, in the United States circuit court for the Northern district of Florida. Execution thereon was duly issued to the United States marshal, and returned unsatisfied. The Augusta Railroad seems to have been undertaken in the hope of increasing the value of some lands in Florida owned by defendant William Clark. It was never built or equipped. Some 13 miles were graded, mainly through a swamp, rails laid on about 11 miles, and one or more bridges nearly completed. It owned a small tug, a locomotive, and a few flat cars. According to the evidence given by complainant's witnesses, from $265,000 to $400,000 was sunk in the enterprise, practically all of which (except Kittel's loan) was advanced by defendant Clark, who was one of the directors, and substantially the owner of the capital stock. Evidently, it was a speculative enterprise, which turned out disastrously. Appreciating this fact, Clark undertook to close out his interest. Suit was brought in his name in the United States circuit court to recover for moneys loaned by him to the company, and judgment by default entered in his favor on October 6, 1890, for $432,228.42. Clark was at that time in Europe, and, through some error in duplicating part of the loan which figured in two notes, of which one was a renewal, the amount of this judgment was excessive. Upon petition to the court the error was rectified, and judgment reduced to $296,484.90. Execution having been issued to the marshal, all the property of the Augusta Railroad (except the land covered by Kittel's mortgage) was sold January 5, 1891, to Clare and associates, for $100,000. Clare was in reality acting on behalf of Clark. A new corporation, the Carrabelle, Tallahassee & Georgia Railroad Company, was organized, and the property turned over to it. This new railroad company is also practically the property of Clark.

The relief prayed in the bill was: (1) That the judgment in favor of defendant Clark against the Augusta Railroad, and proceedings under it, be set aside, vacated, and declared null and void. (2) In the alternative, that the $100,000 received on the sale by Clark be declared the property of the Augusta Railroad, and subject to payment of complainant's claim. (3) That injunction be allowed, re-

straining the said defendants, or either of them, from disposing of said property. (4) That a, receiver be appointed, to whom the said defendants shall be directed to assign said property and all parts of the Augusta Railroad, who shall be authorized to sell, and apply the proceeds to payment of complainant's claim.

The judge who heard the cause at circuit held as to the claim against Clark:

"He was an active and controlling director, and also a creditor with a just debt. The assets of the corporation should, and on proper proceedings would, be applied equitably (which would be ratably) upon the corporate debts. He did no more than any creditor might do, and got no more than any creditor standing out of any trust relation might have. But, as a director, he ought not to have any preference over any other creditor; and, if he should divide ratably with the plaintiff, he would not have. The $100,000 so divided would seem to give the plaintiff $1,901, and leave him $98,099. The plaintiff should accordingly have a decree for that sum, but—it is so small a part of what he has claimed—without costs."

As to the claim against the Carrabelle Railroad, he held that the property in Florida could not be reached from here by a receiver, since it is without the jurisdiction, and that the Carrabelle Company could not be held liable for the $100,000, since it never had anything to do with that money; and he dismissed the bill, as to that company, with costs. The bill was dismissed as to the defendant the Augusta Company without costs.

The cross appeals present many questions for consideration, but, by concession or withdrawal upon the oral argument, a large part of them are disposed of. Counsel for the appellant Clark stated that he would not press his assignments of error which questioned the propriety of the judgment against Clark for $1,901. It will therefore not be necessary to enter into any discussion of the law bearing upon this branch of the case; but we may state that, upon the facts disclosed by the record, we concur with the court below that equity, as administered in the federal courts, should require Clark to divide the proceeds of the sale ratably with complainant.

At the close of the oral argument, counsel for complainant stated that he pressed his appeal only on four points: (1) That the court erred in taking $100,000, only, as the sum to be thus divided ratably; (2) that complainant should have interest on his recovery; (3) that the court erred in refusing to give complainant costs; and (4) in giving costs to the Carrabelle Railroad.

It may be stated at the outset that although, under the decisions, Clark was technically guilty of fraud, as against Kittel, in procuring a sale of the whole property of the company of which he was a director in order to pay the debt due to himself, without protecting Kittel's claim, we are satisfied from the record that no actual fraud was perpetrated by him. Indeed, he seems to have been himself imposed upon, and deluded into an improvident investment, the only really valuable fruits of which were the 109,000 acres mortgaged to the complainant, and bought in by him on foreclosure. Clark was not only a creditor of the company for nearly $300,000, but, except for Kittel, he was apparently the only creditor. There is some vague testimony by one Blake, the promoter of the scheme, and at one time

president of the Augusta Company, to the effect that "it was somewhat indebted; that it owed a number of tradesmen; it owed some of its employés; it owed some attorneys." But the treasurer of the road testified that, so far as he knew, there were no other creditors than Clark and Kittel, and that no claims of any such creditors have been presented against the company. Moreover, when Clark sold the property on his judgment, January 5, 1891, it was not yet determined whether or not Kittel's security would not be sufficient to protect his loan, for the sale in foreclosure under the Kittel mortgage was not until November, 1892. The enterprise in which he (Clark) had embarked was evidently a failure; his money, to the extent of more than $300,000, had been sunk in it, producing nothing of value but the unfinished road, with its paltry equipment; efforts to dispose of the bonds had failed; the railroad practically lived only upon his advances, and when they ceased the work would cease; he had good reason to believe that he was not being dealt with in good faith by some of his official associates; the very loan of Kittel for which most of the real estate was mortgaged seems to have been kept from his knowledge; and he might, with good reason, decide to call a halt, and realize what he could. There was no inequity in his putting his claim in judgment. That such judgment was originally entered for an excessive amount was a clerical error, promptly corrected on his own motion, and not evidence of any bad faith. There was no inequity in his issuing execution upon his judgment, nor in selling the property upon his execution. Equity will not allow a director to obtain preference over other creditors by such judgment, execution, and sale, although bona fide, and therefore the court below required him to share the proceeds with the other creditor. Such proceedings by a director-creditor are sometimes characterized as fraudulent, either because, in the particular cause before the court, other facts showed that actual fraud was present, or because the word is used, inartificially, to indicate that equity will not permit a director to secure a preference over other creditors in this way. It is consonant with entire good faith for a director who is a creditor to enter judgment, issue execution, and sell all property seized under such execution, provided he does not thereby secure any preference, but divides the proceeds ratably with all others who are entitled to share with him. We know of no authority which controverts this proposition. If he neglects to share with another creditor, solely because he did not know of his claim, equity may require him to share when the claim is presented, because it would be inequitable for him to benefit by a preference which it may be presumed that he secured because he was a director. But that is a very different thing from holding that such a transaction is sufficient evidence of actual fraud on his part. If by such judgment, execution, and sale, the director gets possession (or secures possession to his friends) of the property at less than its value, he must account with the other creditors on the basis of the actual value, for he cannot thus secure an advantage to himself over the other creditors. But the court cannot evolve any fanciful estimate of value. It must determine that question from the evidence. The starting point is the price at which it was sold under the court's

order, and the director cannot show that it was worth less. Has it been shown in this case that it was worth any more than $100,000? The only testimony which it is contended tends to show a greater value is that of the sanguine promoter of the scheme. When asked as to the fair and reasonable value of the property, he replied that, "considered as a basis for the enterprise as projected," it was worth the amount of bonds and stock "intended to be issued" per mile; and, as there were to be $17,000 of bonds and $17,000 of stock issued for each mile, the "eleven miles of road would make a valuation of $374,000." This, of course, is mere wild speculation. The same witness further testified that the "total amount expended was $265,000 to $270,000," and that he "should think the property ought to have been worth what it cost, if properly utilized." This testimony is not especially persuasive, even if the court were disposed to place much confidence in the witness' estimate. The question is, what was the property worth when it was sold, not what it would be worth after half a million more had been expended in properly utilizing it. We must accept $100,000, therefore, as the actual value of the property sold.

In view of the conclusions already expressed, to the effect that the defendant Clark was guilty of no actual fraud, and that when he received the proceeds of the sale it was not known that there would be any deficiency in Kittel's security; and in view, further, of the evidence in the case that, although nominally sold for $100,000, the property was really bought in in the interest of Clark himself (no money passing on the transaction), and that he, through Clare and his associates, or through the Carrabelle Railroad, has since held property which has been wholly unproductive, and that until this suit was brought no demand was made to share in the proceeds of the $100,000, and no notification given of the amount of deficiency judgment,—we concur with the court below in the conclusion that no interest is to be allowed, either from the date of the sale of the Augusta Railroad, or from the date of the deficiency judgment. The complaint in this suit, however, apprised defendant Clark that there was a creditor of the old road, entitled, ex æquo et bono, to share proportionately in the proceeds of the sale. If he wished to avoid payment of interest thereafter, he should have tendered the proportionate amount. Complainant is therefore entitled to interest on the $1,901, his proportionate share, from the date of the service of the complaint; and, for the same reason, he is entitled to his costs in the circuit court.

Upon the only theory in this case upon which the proof will justify a decree in favor of the complainant, the Carrabelle Railroad is not a necessary party to the suit. The circuit court therefore properly dismissed the bill as to that corporation with costs.

The decree of the circuit court is therefore modified, and the cause remanded to that court, with instructions to decree in favor of complainant against defendant Clark for $1,901, with interest from the date of the service of complaint, and costs; in favor of the Augusta Railroad, dismissing the bill, without costs; and in favor of the Carrabelle Railroad Company, dismissing the bill, with costs. As to the

costs in this court, inasmuch as complainant has, upon appeal, increased the amount of his decree against the defendant Clark, complainant is entitled to costs of this appeal. Inasmuch as complainant has, by his appeal, failed to disturb the decree of the circuit court in favor of the Carrabelle Railroad Company, that company is entitled to costs of this appeal against complainant.